**E-Filed 09/30/2007**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JOYCE A. BUTTS,<br><br>      Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE[1],<br>Commissioner,<br>Social Security Administration,<br><br>      Defendant. | Case Number C 06-00011 JF<br><br>ORDER[2] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>[re: docket nos. 13, 14] |

## I. BACKGROUND

Plaintiff Joyce A. Butts ("Plaintiff") filed the complaint in this action on January 4, 2006 seeking to reverse or remand for further administrative proceedings a decision by Defendant

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 1, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Jo Anne B. Barnhart as the defendant in this matter.

[2] This disposition is not designated for publication and may not be cited.

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

1  Commissioner of Social Security ("Commissioner") denying her disability insurance benefits.[3]
2  On June 22, 2006, Defendant answered Plaintiff's complaint. On September 6, 2006, Plaintiff
3  filed a motion for summary judgment. On October 6, 2006, Defendant filed a cross-motion for
4  summary judgment. On October 26, 2006, Plaintiff filed a motion seeking permission to submit
5  proof of a favorable disability decision on a second application, pursuant to a psychiatric
6  consultative evaluation.

7        The following facts are taken from the March 25, 2005 ALJ decision and the
8  accompanying administrative record ("AR"). At the time of the hearing, Plaintiff was fifty-two
9  years old and possessed a twelfth-grade education and some college education; her past work
10 experience included employment as a receptionist/clerk. AR at 15. Plaintiff alleges that she
11 became disabled on April 23, 2003 as a result of to a back injury and depression. *Id.* On March
12 18, 2004, Plaintiff filed an application for disability insurance benefits. *Id.* at 14. Her application
13 was initially denied on May 19, 2004. *Id*. at 46. Her application was denied upon reconsideration
14 on September 17, 2004. *Id.* at 54. Pursuant to Plaintiff's request, the ALJ held an administrative
15 hearing on March 4, 2005 in San Jose, California. *Id.* at 14. Plaintiff, who was represented by
16 attorney Phyllis A. Matyi, testified at the hearing. *Id.* Vocational expert Ron Morrell also
17 testified. *Id.*

18       The ALJ found that Plaintiff "was not under a 'disability' as defined in the Social
19 Security Act, at any time through the date of the decision" and therefore "is not entitled to a
20 period of disability or Disability Insurance Benefits" based on the March 18, 2004 application.
21 *Id.* at 20. The ALJ denied Plaintiff's request for a psychiatric consultative evaluation in the
22 matter:

23 > The undersigned notes that the claimant's representative requested a psychiatric consultative examination in this matter. The request is denied because the record reflects
24 > only that the claimant is treated with Paxil/Celexa, without any indication of significant

---

[3]The challenged decision was rendered by Administrative Law Judge Mary L. Everstine ("the ALJ") on March 25, 2005. The ALJ's decision became final on October 31, 2005 when the Appeals Council of the Social Security Administration denied Plaintiff' request for administrative review of the ALJ's decision.

2

complaints to treating sources or recommendations by any treating physician for more intensive mental health treatment. *Id.* at 14.

In determining whether Plaintiff was disabled, the ALJ implemented the "five-step evaluation [that] must be performed pursuant to 20 CFR § 404.1520." *Id.* at 15. At step one, the ALJ determined that the Plaintiff "has not engaged in substantial gainful activity since her alleged onset date." *Id.* at 15. At step two, the ALJ found that the "medical evidence indicates that the claimant has back strain and obesity, impairments that are 'severe' within the meaning of the Regulations." *Id.* at 16. At step three, however, the ALJ determined that Plaintiff's impairments were "not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *Id.* Regarding Plaintiff's subjective complaints, the ALJ found "the allegations by the claimant as to the intensity, persistence, and limiting effects of her symptoms are not well supported by probative evidence and are not wholly credible." *Id.* at 18-19. Regarding mental health, the ALJ found the following:

> ...the claimant has mild restrictions of the activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and, no history of episodes of decompensation. As the claimant's mental impairments cause minimal, if any, limitations, such mental impairments (if any) are considered to be 'non-severe' (20 CFR 404.1520a; SSR 96-3p). *Id.* at 19.

The ALJ therefore moved to step four, and determined that the Plaintiff retains the following residual functioning capacity: "she is able to lift and carry ten pound frequently and twenty pounds occasionally; she is able to sit for six hours of an eight workday; she is able to stand, and/or walk for six hours of an eight hour workday; and, she is precluded from repetitive bending, stooping, crouching, and crawling." *Id.* In determining whether or not Plaintiff could perform past relevant work, the ALJ relied on the testimony of the Vocational Expert. The ALJ noted, "The vocational expert testified that the claimant's past work as a receptionist/clerk is sedentary, semi-skilled work. The vocational expert testified that a person with the claimant's residual functioning capacity and vocational background could perform this work." *Id.* Accordingly, the ALJ found that "the claimant was not under a disability as defined in the Social

3

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

Security Act, at any time through the date of this decision." *Id.*

## II.  LEGAL STANDARD

**A.  Standard for Reviewing the Commissioner's Decision**

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying Plaintiff benefits.  The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

**B.  Standard for Determining Disability**

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  Social Security disability cases are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id.*  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or

4

combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded. *Id.* If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[4] to perform his or her past work; if so, the claimant is not disabled and the claim is denied. *Id.* The plaintiff has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[5] the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R.§§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

### III.  DISCUSSION

**A. Whether the ALJ erred by not referring Plaintiff for a Consultative Psychiatric Evaluation**

Plaintiff argues that the ALJ erred in denying her request for a consultative psychiatric evaluation and that the denial of such a request requires this Court to remand the instant case to

---

[4] A claimant's residual functional capacity is what he or she can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[5] There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

5

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

the ALJ with instructions to conduct such an evaluation. The Commissioner argues that the ALJ was not obligated to order a consultative psychiatric examination and did not abuse her discretion. The Commissioner asserts that Plaintiff did not request a psychiatric consultative examination until February 22, 2005, which is outside the relevant time period for this case and thus would have little probative value. Further, the Commissioner argues the ALJ properly considered and denied Plaintiff's request for a psychiatric consultative evaluation because the record evidence from the relevant time period does not show that Plaintiff suffered from a significant psychiatric illness.

In response, Plaintiff has filed a request with this Court to submit the results of her subsequent application for disability filed on October 20, 2005. This application was in fact referred for a psychiatric consultative evaluation and Plaintiff was awarded Social Security Supplemental Disability benefits, effective as of the date of the new application. The Commissioner has not filed a response to Plaintiff's request.

An ALJ is required to obtain additional medical evidence only if the medical evidence in the record does not provide a sufficient basis to make a decision. 20 C.F.R. § 404.1512; 20 C.F.R. § 404.1519(a). "[T]he Commissioner 'has broad latitude in ordering a consultative examination.'" *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) *citing Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). "The government is not required to bear the expense for an examination for every claimant." *Reed*, 270 F.3d at 842. Cases that do require a consultative examination are those where there is ambiguity or insufficiency in the evidence that must be resolved. *Id.*

Here, the ALJ denied Plaintiff's representative's request for a psychiatric consultative evaluation, noting that:

> The undersigned notes that the claimant's representative requested a psychiatric consultative examination in this matter. The request is denied because the record reflects only that the claimant is treated with Paxil/Celexa, without any indication of significant complaints to treating sources or recommendations by any treating physician for more intensive mental health treatment. *Id.* at 14.

Based on the evidence in the record, the ALJ determined that Plaintiff's mental health limitations were non-severe. The evidence in the record was from Plaintiff's treating physicians, none of whom indicated that Plaintiff might have a severe mental health condition. There is no ambiguous or contradictory evidence in the record regarding Plaintiff's mental health limitations.

Further, there was a legitimate question as to probative value of such an evaluation at the time Plaintiff requested it. In *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984), the Ninth Circuit noted that "[a]fter the fact psychiatric diagnosis are notoriously unreliable." Here, the relevant time period is from April 23, 2003, the onset date Plaintiff alleges for disability, to June 30, 2004, her date last insured for disability insurance purposes. Plaintiff did not request a psychiatric consultative examination until February 22, 2005, nearly eight months after her DLI. Thus, the ALJ reasonably could have concluded that a psychiatric consultative examination would be unreliable. *Id.*, *see also Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). For the same reason, the fact that Plaintiff's subsequently has obtained disability benefits as a result of her psychiatric consultative examination has little probative value with respect to the application at issue here.

Given the broad latitude accorded to the Commission, the ALJ did not err in declining to order a psychiatric consultative evaluation. Because the probative value of the subsequent evaluation is minimal at best, this Court will deny Plaintiff's request to submit the results of the evaluation.

**B. Whether the ALJ Properly Evaluated and Weighed the Medical Evidence**

The ALJ reviewed reports of Plaintiff's treating physicians and the state agency physicians in determining that Plaintiff could perform light work. In her discussion of the evidence, the ALJ rejected a report by Dr. Gable, a consulting physician for the Disability Determination Service (DDS). The ALJ found that Dr. Gable's opinion regarding Plaintiff's allegedly reduced level of activity was inconsistent with his examination and the laboratory reports and X-rays.

Plaintiff argues that the ALJ improperly gave greater weight to the opinion of certain

7

nonexamining and DDS physicians than to that of Dr. Gable. Plaintiff argues that Dr. Gable's opinion is consistent with an MRI report and with the opinion of a treating physician, Dr. Dismond. Dr. Dismond treated Plaintiff immediately following her back injury. He recommended at that time that she engage in limited bending. Because Drs. Gable and Dismond both examined her, Plaintiff argues their opinions should have been given greater weight than the opinions of nonexamining physicians.

The Commissioner contends that the ALJ correctly determined that Dr. Gable's assessment was based on Plaintiff's subjective complaints, rather than on any objective findings. Thus, the Commissioner argues, the ALJ summarized the evidence, resolved any conflicts and ambiguities in the medical reports, and thoroughly and correctly weighed the medical opinions.

In rejecting Dr. Gable's opinion, the ALJ noted that:

> The undersigned rejects Dr. Gable's above-noted opinions, as they are not consistent with the medical record as a whole or with the doctor's own examination notes. The objective laboratory reports and X-rays in this matter are not consistent with the extremely reduced level of activity described by the doctor. Rather, the doctor appears to have accepted the claimant's exaggerated subjective complaints.

Such inconsistencies noted in Dr. Gable's report included a notation that Plaintiff did not have a antalgic gait when she entered the room, but did have a slight antalgic gait during the examination. Dr. Gable stated that Plaintiff's pain was "poorly described." Although Plaintiff stated that she needed help coming to a sitting position, Dr. Gable noted that "[Plaintiff] was, however, able to get on and off the table." He stated that Plaintiff "claims she couldn't anteroflex more than 30 degrees . . . but there was no appreciable muscle spasm." Dr. Gable observed that Plaintiff's muscles were well developed with no atrophy and noted Plaintiff's claims that she could not extend her lumbar spine more than about 15 degrees. He stated that "[Plaintiff] has an MRI apparently that was positive for a small disc in the L5-S1" but went on to observe "[t]o me, there were really no positive signs for true radiculopathy." Because of these conflicts and ambiguities, Dr. Gable stated that an assessment of Plaintiff was "difficult." Nevertheless, Dr. Gable opined that while Plaintiff could perform the lifting requirements of

8

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

light work, she could stand and/or walk only two hours out of an eight hour workday. Because Dr. Gable's report was inconsistent with itself and with the other evidence in the record, the ALJ properly rejected the opinion of Dr. Gable. *Bunnell v. Sullivan*, 921 F.2d 1149 99th Cir. 1990), modified by *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991)(*en banc*).

The ALJ also properly rejected the opinion of Dr. Dismond who treated Plaintiff after her injury, since he recommended limitations on Plaintiff's activity shortly after she suffered her back injury, and there is no indication in the record that the limitations were meant to be effective for any continuous twelve-month period. *See* 20 C.F.R. § 404.1505. Accordingly, this Court finds no error in the ALJ's determination with respect to the medical evidence.

**C. Whether the ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Plaintiff also argues that the ALJ improperly discredited her testimony that she suffered from severe pain. Specifically, Plaintiff alleges that the medical evidence supports a determination pursuant to Listing 1.04 for disorders of the spine. The Commissioner contends that the ALJ properly articulated several valid reasons for rejecting Plaintiff's subjective complaints of severe pain and that the medical evidence does not support a finding that Plaintiff's injury is consistent with the Listing 1.04.

An ALJ may reject a claimant's complaints of disabling symptoms by making specific findings, based on the record, for rejecting such complaints. *See Bunnell*, 947 F.2d at 346-347; 20 C.F.R. § 404.1529. In this case, the ALJ found that Plaintiff's condition was severe and limited her to performing light work. However, the ALJ did not conclude that Plaintiff's back impairment met Listing 1.04 (disorders of the spine). As noted by the ALJ, there is no objective medical evidence in the record of nerve root compression or motor loss, as required by Listing 1.04(a). Dr. Gable indicated that Plaintiff could perform sedentary work. The examination by Dr. Kaisler-Mesa showed intact motor strength and intact sensory examination. Dr. Scott observed no atrophy in Plaintiff's lower extremities and noted that Plaintiff had a smooth gait and normal muscle strength. Finally, the ALJ properly considered the low level of follow-up care recommended by Plaintiff's physicians.

9

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

1   This Court's review of the ALJ's decision regarding credibility determinations is limited.
2   *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ's credibility findings are
3   sufficiently specific to assure this Court that the ALJ did not arbitrarily discredit Plaintiff's
4   testimony.  Thus, according the credibility determination the deference to which it is entitled, the
5   Court finds no error.

**D.  Whether the ALJ Properly Assessed Plaintiff's Alleged Limitations**

The ALJ posed the following hypothetical question to the vocational expert:

> Please assume that we're dealing here with a hypothetical individual with the same age as the claimant which is 52, closely approaching advanced age.  The same educational background which is more than high school education, and the same past work as you've just identified.  Further assume that this individual retains the residual functional capacity for light exceptional work activity as defined in the Dictionary of Occupational Titles and the Social Security regulations.  Further limited to no repetitive bending, stooping, crouching, crawling.  Could she perform any or all of her past relevant work?

Plaintiff asserts that the ALJ erred because the hypothetical question did not include all of Plaintiff's claimed limitations.  The Commissioner argues that the ALJ properly included only those limitations which she found were supported by the evidence.

Under Ninth Circuit law, alleged restrictions an ALJ finds to be unsupported by the record need not be included hypothetical question asked of a vocational expert. *Copeland v. Bowen*, 861 F.2d 536, 540-541 (9th Cir. 1988).  As stated above, in this case the ALJ properly rejected Plaintiff's subjective testimony as well as certain medical evidence from Drs. Gable and Dismond.  Accordingly, the ALJ's hypothetical was not improper.

**E.  Whether the ALJ Properly Considered Plaintiff's Alleged Impairments**

Plaintiff argues that the ALJ erroneously did not consider Plaintiff's sleep apnea and knee impairment and thus did not properly consider the affects of the combination of Plaintiff's impairments.  The Commissioner responds that Plaintiff did not submit sufficient evidence of these particular impairments.

Under Ninth Circuit law, it is the Plaintiff's burden to submit evidence that her impairments caused functional limitations. *Burch v. Barnhart*, 400 F.3d 676, 681-683 (9th Cir.

10

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

1  2005). Here, Plaintiff was represented by an attorney during the proceedings and presumably
2  submitted all relevant evidence. The evidence does not show that Plaintiff's sleep apnea was
3  severe. Rather, it shows that in February 2004, Plaintiff was treated for sleep apnea by being
4  prescribed a machine for treatment. This treatment appears to have been effective, as there is no
5  evidence in the record that Plaintiff complained again to any physician about her sleep problems.
6  Although x-rays showed degenerative changes in Plaintiff's right knee, and Dr. Scott observed
7  "some tenderness," Dr. Scott did not observe any evidence of swelling, effusion, crepititus, or
8  other abnormalities. Dr. Gable stated that both of Plaintiff's knees could be flexed with no
9  crepitation. Thus, because the evidence does not show that these impairments meet medical
10 severity requirements, the ALJ did not err in not considering them in her analysis. *See Gregory*
11 *v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988).

## IV.  ORDER

Good cause appearing, IT IS HEREBY ORDERED that:

(1)  Plaintiff's motion for summary judgment is DENIED;

(2)  Defendant's cross-motion for summary judgment is GRANTED; and

(3)  The Clerk shall enter judgment and close the file.

DATED: September 30, 2007

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-00011 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)

1 | **This Order has been served upon the following persons:**

Phyllis A. Mayi
P.O. Box 426
Larkspur, CA   94977

Scott N. Schools
United States Attorney
450 Golden Gate Ave., Box 36055
San Francisco, CA   94102

12

Case No. C 06-00011 JF

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT _____
(JFLC3)